UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KMART CORPORATION,<br><br>                              Plaintiff,<br><br>-against-<br><br>GOODRICH HAZLET L.L.C., and GOODRICH MANAGEMENT CORP.,<br><br>                              Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff KMART CORPORATION, by and through its attorneys Canter Law Firm P.C., by way of a Complaint against the defendant GOODRICH HAZLET L.L.C., and GOODRICH MANAGEMENT CORP., states as follows:

## PARTIES

1. At all times hereinafter mentioned, plaintiff KMART CORPORATION ("Kmart" or "Plaintiff"), was and is a Corporation organized under the laws of Michigan with its principal place of business located at 3333 Beverly Road, in the City of Hoffman Estates, County of Cook and State of Illinois.

2. At all times hereinafter mentioned, defendant GOODRICH HAZLET L.L.C., ("Goodrich" or "Landlord") was and is a Limited Liability Company organized under the laws of the State of New Jersey with its principal place of business located at 560 Sylvan Avenue, City of Englewood Cliffs, County of Bergen, State of New Jersey.

3. At all times hereinafter mentioned, defendant GOODRICH MANAGEMENT CORP., ("Goodrich Management") was and is a Corporation organized under the laws of the State of New Jersey with its principal place of business located at 560 Sylvan Avenue, City of Englewood Cliffs, County of Bergen, State of New Jersey.

**JURISDICTION AND VENUE**

4.  The jurisdiction of this Court is invoked under 28 U.S.C. §1332 as plaintiff and defendants are citizens of different states and the amount in controversy exceeds the sum of Seventy-five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs.

5.  Venue is properly made in this District pursuant to 28 U.S.C. §1391(a)(1) as the defendants reside within this District.

**NATURE OF ACTION**

6.  Plaintiff seeks compensatory damages, together with any pre-judgment and post judgment, interest costs and disbursements of this action, from defendant for breach of contract, negligence and gross negligence.

**STATEMENT OF FACTS**

7.  Upon information and belief, at all times hereinafter mentioned, Kmart operated a Kmart retail store in the space it leased from Goodrich located at the KMart Plaza on Route 35 & Bethany Road in the city of Hazlet, County of Monmouth and State of New Jersey (the "Premises").

8.  Upon information and belief, on or about July 10, 1969, Haverich Associates, the predecessor in interest of Goodrich, and S. S. Kresge Company, the predecessor in interest to Kmart, entered into a lease agreement, for valuable consideration, to lease a portion of the Premises for a period of twenty three years, commencing from the date of occupancy as defined therein and with the option to renew the lease in five year increments up to fifteen years (the "Lease").

9.  Upon information and belief, on or about August 14, 1970, September 15, 1970, April 29, 1982, and February 7, 1996 Haverich Associates, the predecessor in interest of Goodrich, and S. S. Kresge Company, the predecessor in interest to Kmart, entered into the respective first,

second and third amendments of lease agreement, and a certain consent agreement (collectively the "Amendments"), for valuable consideration, which modified the lease terms in a manner not relevant hereto.

10. Upon information and belief, the Lease and Amendments having been appropriately extended and/or renewed, on or about March 14, 2008, Plaintiff Kmart and Defendant Goodrich entered into Fourth Amendment of Lease, for valuable consideration, which *inter alia*, extended the terms of the Lease and Amendments through January 21, 2020 subject to certain modifications contained therein.

11. Accordingly, the Lease and the Amendments thereto were in effect at all relevant times herein.

12. The Lease provides in pertinent part as follows:

> 14. Tenant shall make and pay for all replacement of plate glass and all nonstructural repairs and replacements to the interior of the Tenants buildings, including heating, plumbing, air conditioning and electrical systems, which it deems necessary to keep the premises in a good state of repair, but in no event shall Tenant be obligated to make repairs and replacements which Landlord shall be required to make under any provision of this lease or which shall be necessitated by Landlord's negligence, default or failure to repair. Landlord shall make and pay for all repairs and replacements (except those which Tenant shall be specifically obligated to make under the provisions of this Article and those due to Tenant's negligence) to said buildings which shall be necessary to maintain the same in a safe, dry and tenantable condition, and in good order and repair. Notwithstanding anything to the contrary herein contained, Tenant shall not be required to make any repairs or replacements (or be liable for the cost thereof) which shall be necessitated by any damage or destruction with respect to which Landlord shall be insured or against which Landlord shall be required by the terms of this lease to insure, but Landlord shall make all such repairs or replacements.
>
> In the event buildings or improvements constituting demised premises or a portion thereof shall be rendered unusable due to Landlord's default or negligence with respect to required repairs, there shall be a just and equitable abatement of said annual minimum rental and all other charges payable under this lease until said premises shall be made usable.

3

Emergency repairs which shall be Landlord's responsibility hereunder, and which shall be necessary to protect the buildings or contents may be made by Tenant without notice to Landlord, and the cost of such repairs not to exceed One Thousand Dollars ($1000.00) in any one instance, may be deducted by Tenant from rentals subsequently accruing hereunder.

\* \* \*

19. From and after the date on which Tenant shall be privileged to enter upon demised premises for the purposes specified in Article 8 hereof, Landlord shall insure the buildings depicted on Exhibit "B", including Tenant's buildings, against damage or destruction by fire and other casualties insured under a standard extended coverage endorsement. Said insurance shall be in an amount equal to not less than eighty per cent (80%) of the insurable value of the permanent improvements thereof. All such policies shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of modification or cancellation thereof and that the assured has waived right of recovery from Tenant. Copies of such insurance policies or certificates evidencing the existence thereof, so endorsed, shall be promptly delivered to Tenant upon written request therefor. Irrespective of the cause thereof, neither Landlord nor Tenant shall be liable for any loss or damage to said buildings resulting from fire, explosion or any other casualty.

In the event that, at any time during the lease term, the permanent improvements then constituting Tenant's buildings and site improvements shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; . . .

During any, period commencing upon the date of any such damage or destruction and ending upon the "date of reoccupancy by Tenant", the annual minimum rental and any other charges payable under this lease shall abate in the proportion that the part of Tenant's buildings which shall be untenantable shall bear to the whole.

In the event that, at any time during the lease term except the last two (2) years thereof, any building or buildings within the site depicted on Exhibit "B", other than Tenant's building or buildings, shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; . . .

\* \* \*

> 29. In the event Landlord shall . . . fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for seven (7) days after notice thereof by Tenant, (two (2) days with respect to defaults under Article 9 hereof) . . . cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand pay Tenant forthwith the amount so paid by Tenant together with interest thereon at the rate of six per cent (6%) per annum, and Tenant may withhold any and all rental payments and other payments thereafter due to Landlord and apply the same to the payment of such indebtedness . . .

13. Upon information and belief, prior to October 29, 2012, Kmart notified Goodrich on numerous occasions of leaks in the roof of the Premises.

14. Upon information and belief, despite Kmart's notice, Goodrich failed to adequately install, repair and/or maintain the roof of the Premises.

15. On or about October 29, 2012, the Premises was struck by Hurricane Sandy (the "Storm"), which caused the improperly installed, repaired and/or maintained roof of the Premises to be significantly compromised and resulted in a significant water infiltration into the Premises.

16. Upon information and belief, the winds associated with Storm in the area of the Premises did not exceed the minimum design thresholds set forth for the State of New Jersey by the BOCA National Building Code.

17. Upon information and belief, the roofs other business in the shopping complex with other roofing systems were not damaged.

18. On or about November 6, 2012, Plaintiff advised defendants of its intent to cure Defendant's default pursuant to section 29 of the Lease, specifically Defendant Goodrich's failure to perform interior structural repairs, of which Plaintiff has not been reimbursed nor has its rent been abated.

19. As a direct and proximate result of the foregoing, Plaintiff Kmart suffered extensive water damage to its merchandise and business personal property, and incurred, *inter alia*, business losses, emergency mitigation service and building dry-out expenses, in addition to other extra expenses in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20).

20. As a direct and proximate result of the foregoing, plaintiff demands judgment in an amount to be determined at trial, but in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20), plus pre and post judgment interest and the costs necessitated by the bringing of this action.

## COUNT ONE
### (Breach of Contract – Defendant Goodrich Hazlet, LLC)

21. Plaintiff repeats and reiterates each and every allegation contained in paragraphs "1" through "20" of this complaint as if set forth herein in full.

22. Upon information and belief, pursuant to the Lease and Amendments, defendant Goodrich, its agents, employees and representatives had a contractual obligation to reasonably and prudently ensure that the premises remained in a safe, dry and tenable condition.

23. Upon information and belief, pursuant to the Lease and Amendments, defendant Goodrich, its agents, employees and representatives had a contractual obligation to reimburse plaintiff Kmart for any expenses incurred by Kmart's cure of Goodrich's default pursuant to Section 29 of the Lease.

24. Upon information and belief, defendant Goodrich, its agents, employees and representatives breached their contractual obligation by failing to reasonably and prudently ensure that the premises remained in a safe, dry and tenable condition.

25. Upon information and belief, defendant Goodrich, its agents, employees and representatives further breached their contractual obligation by failing to reimburse plaintiff Kmart for any expenses incurred by Kmart's cure of Goodrich's default pursuant to Section 29 of the Lease.

26. Upon information and belief, at all times relevant hereto, Plaintiff Kmart complied with its duties and responsibilities pursuant to the Lease and Amendments.

27. On or about October 29, 2012, the Premises was struck by Hurricane Sandy, which caused the improperly installed, repaired and/or maintained roof of the premises to be significantly compromised and resulted in a significant water infiltration into the Premises.

28. Upon information and belief, the winds associated with Storm in the area of the Premises did not exceed the minimum design thresholds set forth for the State of New Jersey by the BOCA National Building Code.

29. Upon information and belief, the roofs other business in the shopping complex with other roofing systems were not damaged.

30. On or about November 6, 2012, Plaintiff advised defendants of its intent to cure Defendant's default pursuant to section 29 of the Lease, specifically Defendant Goodrich's failure to perform interior structural repairs, of which Plaintiff has not been reimbursed nor has it rent been abated.

31. As a direct and proximate result of the foregoing, Plaintiff Kmart suffered extensive water damage to its merchandise and business personal property, and incurred, *inter alia*, business losses, emergency mitigation service and building dry-out expenses, in addition to other extra expenses in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20).

32.     As a direct and proximate result of the foregoing, plaintiff demands judgment in an amount to be determined at trial, but in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20), plus pre and post judgment interest and the costs necessitated by the bringing of this action.

## COUNT TWO
### (Negligence)

33.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs "1" through "32" of this complaint as if set forth herein in full.

34.     Upon information and belief, defendants Goodrich and Goodrich Management, their agents, employees and representatives had duty to reasonably and prudently ensure that the premises remained in a safe, dry and tenable condition.

35.     Upon information and belief, defendants Goodrich and Goodrich Management, their agents, employees and representatives breached their duty by failing to reasonably and prudently ensure that the premises remained in a safe, dry and tenable condition.

36.     Defendants Goodrich and Goodrich Management knew, or should have known, that the roof of the Premises was not adequately installed, repaired and/or maintained in manner that could withstand foreseeable winds below the required minimum design threshold so as to avoid foreseeable damage to the Premises.

37.     On or about October 29, 2012, the Premise was struck by Hurricane Sandy, which caused the improperly installed, repaired and/or maintained roof of the premises to be significantly compromised and resulted in a significant water infiltration into the store.

38.     Upon information and belief, the winds associated with Storm in the area of the Premises did not exceed the minimum design thresholds set forth for the State of New Jersey by the BOCA National Building Code.

39. Upon information and belief, the roofs other business in the shopping complex with other roofing systems were not damaged.

40. The subject water infiltration was caused solely by the negligence of the Defendants, and the Plaintiff was not responsible in whole or in part in connection with this loss.

41. As a direct and proximate result of the foregoing, Plaintiff Kmart suffered extensive water damage to its merchandise and business personal property, and incurred, *inter alia*, business losses, emergency mitigation service and building dry-out expenses, in addition to other extra expenses in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20).

42. As a direct and proximate result of the foregoing, plaintiff demands judgment in an amount to be determined at trial, but in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20), plus pre and post judgment interest and the costs necessitated by the bringing of this action.

## COUNT THREE
**(Gross Negligence)**

43. Plaintiff repeats and reiterates each and every allegation contained in paragraphs "1" through "42" of this complaint as if set forth herein in full.

44. Upon information and belief, defendants Goodrich and Goodrich Management, their agents, employees and representatives had duty to reasonably and prudently ensure that the roof of the premises was installed, repaired and/or maintained in such a manner as to avoid foreseeable damage to the Premises.

45. Upon information and belief, defendants Goodrich and Goodrich Management, their agents, employees and representatives breached their duty by failing to reasonably and

prudently ensure that the roof of the premises was installed, repaired and/or maintained in such a manner as to avoid foreseeable damage to the Premises.

46. Defendants Goodrich and Goodrich Management knew, or should have known, that the roof of the Premises was not adequately installed, repaired and/or maintained in manner that could withstand foreseeable winds below the required minimum design threshold so as to avoid foreseeable damage to the Premises.

47. Upon information and belief, defendants Goodrich and Goodrich Management, their agents, employees, subcontractors and/or representatives acted with reckless disregard for Plaintiff's rights under the Contract and under the common law, and such conduct smacked of intentional wrongdoing, and constitutes gross negligence.

48. Defendants Goodrich and Goodrich Management, their agents, employees, subcontractors and/or representatives recklessly and with callous disregard ignored the danger and hazard of failing to adequately install, repair and/or maintain the roof of the premises in manner that could withstand foreseeable winds below the required minimum design threshold so as to avoid foreseeable damage to the Premises.

49. Upon information and belief, prior to October 29, 2012, Kmart notified Goodrich on numerous occasions of leaks in the roof of the Premises.

50. On or about October 29, 2012, the Premise was struck by Hurricane Sandy, which caused the improperly installed, repaired and/or maintained roof of the premises to be significantly compromised and resulted in a significant water infiltration into the store.

51. Upon information and belief, the winds associated with Storm in the area of the Premises did not exceed the minimum design thresholds set forth for the State of New Jersey by the BOCA National Building Code.

52. Upon information and belief, the roofs other business in the shopping complex with other roofing systems were not damaged.

53. The subject water infiltration was caused solely by the gross negligence and recklessness of the Defendants, and the Plaintiff was not responsible in whole or in part in connection with this loss.

54. As a direct and proximate result of the foregoing, Plaintiff Kmart suffered extensive water damage to its merchandise and business personal property, and incurred, *inter alia*, business losses, emergency mitigation service and building dry-out expenses, in addition to other extra expenses in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20).

## COUNT FOUR
**(Unjust Enrichment – Defendant Goodrich Hazlet, LLC)**

55. Plaintiff repeats and reiterates each and every allegation contained in paragraphs "1" through "54" of this complaint as if set forth herein in full.

56. On or about November 6, 2012, Plaintiff advised defendants of its intent to cure Defendant's default pursuant to section 29 of the Lease, specifically Defendant Goodrich's failure to perform interior structural repairs, of which Plaintiff has not been reimbursed nor has it rent been abated.

57. Plaintiff has incurred in excess of Five Hundred Seventy-One Thousand Thirty-Three Dollars and Ninety Six Cents ($571,033.96) in connection with building dry-out services and building restoration expenses.

58. Defendant Goodrich was unjustly enriched in that, pursuant to the Lease and Amendments, Defendant Goodrich was responsible for the expenses associated with the building dry-out services and building restoration expenses that were paid for by Plaintiff.

11

59. Based upon the foregoing, it is against equity and good conscience to permit Defendant Goodrich to retain the aforesaid benefits without payment.

60. As a direct and proximate result of the foregoing, Defendant Goodrich was unjustly enriched and Plaintiff suffered damages in an amount to be determined at trial, but in excess of Five Hundred Seventy-One Thousand Thirty-Three Dollars and Ninety Six Cents ($571,033.96).

## JURY DEMAND

61. Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

- A. Judgment on Counts One, Two, Three and Five against defendant GOODRICH HAZLET L.L.C in an amount to be determined at trial, but in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20);

- B. Judgment on Count Four against defendant GOODRICH HAZLET L.L.C in an amount to be determined at trial, but in excess of Five Hundred Seventy-One Thousand Thirty-Three Dollars and Ninety Six Cents ($571,033.96);

- C. Judgment on Counts Two, Three and Five against defendant GOODRICH MANAGEMENT CORP. in an amount to be determined at trial, but in excess of One-Million One Hundred Ninety-Three Thousand Three-Hundred Fifty-Five Dollars and Twenty-Cents ($1,193,355.20);

- D. Awarding Plaintiff interest on any amount to be paid to the Plaintiff at such rate as the Court shall determine to be appropriate;

- E. Awarding Plaintiff the costs of this action together with reasonable attorney's fees as permitted by contract or statute;

- F. Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

CANTER LAW FIRM P.C.

*[signature: Nelson E. Canter]*

Nelson E. Canter, Esq.
*Attorneys for Plaintiff*
123 Main St. 9th Floor
White Plains, N.Y. 10601
Tel. 914-948-3011
Fax: 914-948-3066
ncanter@canterlawfirm.com